**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FELIX BOADU,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2265

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-113-127)

Submitted: June 9, 1998

Decided: September 23, 1998

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, JOHNSON & ASSOCIATES, Arlington, Vir-
ginia, for Petitioner. Frank W. Hunger, Assistant Attorney General,
Karen Fletcher Torstenson, Assistant Director, Donald A. Couvillon,
Office of Immigration Litigation, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Felix Boadu petitions for review of a final order of the Board of Immigration Appeals ("BIA") denying his application for asylum and withholding of deportation. Because substantial evidence supports the BIA's decision, we affirm.

The Immigration and Nationality Act (the "Act") authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R.§ 208.13(b)(1) (1997). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. 8 C.F.R. § 208.13(b)(1)(i) (1997).

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). "To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane." Id.

We must uphold the BIA's determination that Boadu is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the BIA all possible defer-

_____

*We note that 8 U.S.C. § 1105a(a)(4) (1994) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.

2

ence. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). The decision may be"reversed only if the evidence presented by [Boadu] was such that a reasonable fact-finder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Evidence established that Boadu, a native and citizen of Ghana, was a leader of the movement for freedom and justice in the Kipi region from 1984 until he left Ghana in 1990. This group opposed the military dictatorship of Flight Lieutenant Jerry Rawlings and later formed into the New Patriotic Party ("NPP") of Ghana. As a result of these activities, Boadu was arrested in September 1990 and was detained for four days. While detained, he was beaten and interrogated. Boadu was released from detention after the intercession of his family and other people from Kipi and was warned not to participate in future political activities under penalty of death.

Despite this warning, Boadu continued his political involvement. In late 1990, he and four others were driving from a political meeting in Kipi, when they were stopped by soldiers and confronted about their political activities. There was no physical altercation, but the soldiers again warned Boadu not to participate in politics. Fearing further reprisals, Boadu secured a visitor's visa to the United States and fled by disguising himself in Nigerian attire.

Citing the above evidence, Boadu maintains that the BIA erred in finding that the past persecution he suffered did not merit a grant of asylum on humanitarian grounds. He further contends that the BIA erred in finding that, assuming he suffered past persecution, he could not show a well-founded fear of future persecution in Ghana because of significant changes in the political climate.

The BIA found that, even assuming Boadu suffered past persecution, it was not severe enough to warrant a grant of asylum on human-

_____

L. No. 104-128, 110 Stat. 3009 ("IIRIRA"), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

itarian grounds. We agree that, while unfortunate, Boadu's detention and mistreatment by Ghanian authorities in 1990 does not merit a humanitarian grant of asylum based on past persecution alone. The facts in this case are similar to those in other cases in which federal courts have upheld administrative rejections of similar asylum claims based on past persecution. See Skalak v. INS, 944 F.2d 364, 365 (7th Cir. 1991) (denial of asylum lawful where claimant jailed twice for interrogation, for three days each time, and harassed by officials at work); Kapcia v. INS, 944 F.2d 702, 704, 708-09 (10th Cir. 1991) (holding denial of asylum lawful where claimant was arrested four times, detained three times, beaten once, had house searched, and was treated badly at work; other claimant suffered two-day interrogation, detention, and beating, had parents' home searched, received bad work projects and no bonus, was conscripted into army where he was harassed, and was finally fired from job); Kubon v. INS, 913 F.2d 386, 388 (7th Cir. 1990) (holding denial of asylum lawful where claimant jailed for five days; "a brief confinement for opposition to a totalitarian regime does not necessarily constitute persecution"); see also Zalega v. INS, 916 F.2d 1257 (7th Cir. 1990) (holding denial of asylum lawful where neutral, non-Solidarity member repeatedly arrested and interrogated, fired from job). While "[t]he experience of persecution may so sear a person with distressing associations with his native country that it would be inhumane to force him to return there, even though he is in no danger of further persecution," Skalak, 944 F.2d at 365, this is not such a case.

In addition, we find that Boadu cannot show a well-founded fear of future persecution because of changes in the conditions in Ghana. The State Department's report in the record cites various changes in Ghana since Rawlings consented to permit popular elections in 1992, including a decline in human rights abuses, an offer of amnesty to Ghanians in voluntary exile outside of the country, the active participation of opposition political parties, and the release of the last known political prisoner. Further, the NPP has now merged with other political groups to form an outspoken alliance in Ghana. Moreover, the man who inspired Boadu to begin his political involvement ran for president in 1992 and still remains in Ghana.

While Boadu submitted evidence painting a somewhat bleaker picture of Ghana's political and human rights developments, we cannot

say that this evidence, which was fully considered by the Immigration Judge, "compels" reversal of the BIA's decision. See Cruz-Diaz v. INS, 86 F.3d 330, 331 (4th Cir. 1996) (noting standard of review courts must apply in reviewing decisions of the BIA). Because substantial evidence supported the BIA's determination of changed conditions, we affirm.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the BIA's finding that Boadu is ineligible for asylum, he cannot meet the higher standard for withholding of deportation.

Accordingly, we affirm the BIA's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5