UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GERMAN APARICIO; ROSA AMELIA
CASTRO,
<u>Petitioners,</u>

v.                                                                No. 97-2752

U. S. IMMIGRATION &
NATURALIZATION SERVICE,
<u>Respondent.</u>

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A71-799-672, A71-799-659)

Submitted: July 14, 1998

Decided: August 19, 1998

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

John William O'Leary, Washington, D.C., for Petitioners. Frank W.
Hunger, Assistant Attorney General, Richard M. Evans, Assistant
Director, Holly A. Gimbel, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioners German Aparicio and Rosa Amelia Castro, husband and wife, seek review of an order of the Board of Immigration Appeals (Board) affirming the decision of the immigration judge (IJ) and denying them political asylum, 8 U.S.C.A. § 1158 (West Supp. 1998), and withholding of deportation, 8 U.S.C.A. § 1253(h) (West Supp. 1998).

Both Aparicio and Castro are citizens of El Salvador who entered the United States without inspection in 1991. Aparicio returned to El Salvador on a family matter while his application for asylum was pending, and was paroled into the United States. Aparicio's claim is the principal one, with Castro filing as a dependent or derivative applicant. The IJ denied the applications for asylum and withholding of departure but granted Castro voluntary departure. The Board affirmed the IJ, and we deny the petition for review.

I

Aparicio, born in 1936, was a farmer in El Salvador. During the civil unrest there, one of Aparicio's sons was kidnaped by the guerrillas. Aparicio did not see him for three years, until 1986 when he deserted the guerrillas. The son ultimately fled to the United States and was granted asylum. Aparicio financed his escape. The guerrillas asked about this son's whereabouts on at least one occasion, and demanded that Aparicio give the guerrillas food and money several times over the next five years. In 1990, when Aparicio told the guerrillas he could give them nothing because all his money was tied up in the farm, they burned part of the farm and painted the initials of the group on the barn. A year later, the guerrillas demanded a large sum of money and said they would return in three weeks for the money. Aparicio fled the country because he felt he could not comply with the guerrillas' demands and would eventually be killed.

2

In 1992, a former companion of Aparicio's and mother of two of his children was killed at his house when she refused to give money to the guerrillas. Aparicio returned to El Salvador for a month to settle her affairs and arrange for the care of their children. While there, he did not walk around freely because he feared he would be killed by the guerrillas. Aparicio testified before the IJ that, while he is aware that a peace accord was signed in El Salvador, he does not believe that the guerrillas who have taken over his land would give it back to him.

The IJ found that Aparicio was a credible witness, but that Aparicio presented no evidence that the guerrillas sought to punish him because of his association with the son who deserted their ranks, or that his experience with the guerrillas was different than others who lived in the area. The IJ also concluded that Aparicio presented no evidence that his fear of persecution extended throughout all of El Salvador, so that Aparicio could have relocated to another area of the country. The Board agreed with the IJ's ruling, finding that Aparicio and Castro were never harmed by the guerrillas, whose purpose in intimidating and demanding money was to further the cause of their organization. The Board found as well that petitioners presented no evidence the guerrillas still exist in El Salvador and are likely to mistreat those who refused to cooperate or who are related to deserters.

II

The Immigration and Nationality Act (the Act), 8 U.S.C.A. §§ 1101-1537 ( West 1970 & Supp. 1998), provides two ways to avoid deportation for an otherwise deportable alien who claims he will be persecuted on returning to his home country. First, an alien can apply for asylum. 8 U.S.C. § 1158(a). The Attorney General has authority, under § 1158(b)(1), to confer asylum if she concludes the alien is a refugee as defined by the Act. A refugee is anyone unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998). The "well-founded fear of persecution" standard contains both a subjective and an objective component. Presenting candid, credible, and sincere testimony, which demonstrates a genuine fear of persecution, satisfies

the subjective element. <u>Figeroa v. INS</u>, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. <u>Huaman-Cornelio v. Board of Immigration Appeals</u>, 979 F.2d 995, 999 (4th Cir. 1992). The fear must be appreciably different from the dangers faced by the alien's fellow citizens. <u>Figeroa</u>, 886 F.2d at 80.

An alien claiming persecution can also avoid deportation by applying for "withholding of deportation," 8 U.S.C.A. § 1253(h) (West Supp. 1996).**1** Under this provision, the Attorney General will not deport an alien upon finding that the alien's life or freedom would be threatened there because of his race, religion, nationality, membership in a social group, or political opinion. The alien must demonstrate a clear probability of persecution based on one of these factors. <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 430 (1987). If an alien is unable to establish his right to asylum, he will be unable to meet this stricter standard for withholding of deportation. <u>Huaman-Cornelio</u>, 979 F.2d at 1000.

This court must uphold the Board's decision dismissing appeal of the IJ's ruling if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole. .. ." 8 U.S.C.A. § 1105(a)(4) (West Supp. 1998).**2** The Board's ruling that Aparicio and Castro are not entitled to asylum cannot be reversed unless we conclude that the evidence presented was so compelling no reasonable fact finder could fail to perceive the requisite fear of persecution. <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 483-84 (1992).

_____

**1** Aparicio and Castro were in exclusion proceedings before April 1, 1997, the effective date of the Illegal Immigration Reform Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. Therefore, under the transitional rules contained in § 309(c)(1) of the IIRIRA, the amendments to the Act do not apply.
**2** We note that 8 U.S.C. § 1105(a)(4) was repealed by the IIRIRA, and replaced with 8 U.S.C.A. § 1252(b)(4) (West Supp. 1998). Again, because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c)(4) of the IIRIRA.

4

III

After reviewing the briefs and administrative record, we conclude that Aparicio and Castro have not met this substantial burden. The evidence supports the Board's conclusion that the guerrillas wanted money to further their cause. Aparicio and Castro were not threatened or mistreated because of membership in a particular social group or because of their political beliefs, "any more than any other citizen of El Salvador who participated in or refused to participate in the activities of . . . the guerrillas . . . ." Cruz-Diaz v. INS, 86 F.3d 330, 331 (4th Cir. 1996). Therefore, Aparicio and Castro failed to establish past persecution for one of the statutory factors. Nor have they established a well-founded fear of persecution upon their return to El Salvador, lacking any concrete proof to support their subjective fear. We uphold the Board's decision denying asylum under 8 U.S.C.§ 1158. Moreover, since they have not established their eligibility for asylum, they cannot satisfy the higher standard for withholding of deportation under 8 U.S.C. § 1253(h). Huaman-Cornelio , 979 F.2d at 1000. We deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED

5